IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL QUINCY SANDERS,
    Plaintiff,

vs.                                        Case No.: 3:17cv803/MCR/EMT

GEO GROUP, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Quincy Sanders ("Sanders"), an inmate of the Florida Department of Corrections ("FDOC"), is proceeding pro se and in forma pauperis in this civil rights action. Presently before the court is Sanders' Fifth Amended Complaint (ECF No. 33).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Sanders, it is the opinion of the undersigned that Sanders' claims against two of the five Defendants should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.    BACKGROUND

Sanders' complaint concerns events that occurred at Blackwater River Correctional Facility, an FDOC facility privately run by the GEO Group (*see* ECF No. 33). Sanders sues the GEO Group, Warden Charles Maiorana, Captain L. Williams, Sergeant Johns, and Officer Crawford (*id.* at 1–3).[1] Sanders alleges that on July 10, 2017, Defendant Crawford knowingly provided five known gang members from another dormitory access to Sanders' secured dormitory and cell, wherein the gang members assaulted and battered him, causing a severe seizure and serious head trauma (*id.* at 6–7). Sanders alleges he was taken to a local hospital for treatment (*id.* at 7). He alleges he complained to the treating physician that he had a loss of vision in his left eye (*id.*). Sanders alleges the physician told him that the loss of sight was due to the swelling of his head and possible nerve damage which "may correct itself in time," but Sanders states he still has blurred vision in his left eye (*id.*).

Sanders alleges that upon his return to Blackwater River C.F., he met with Defendant Captain Williams, expressed concern for his personal safety and that he was in fear for his life, and requested placement in Protective Management (ECF No. 33 at 7). Sanders alleges Captain Williams placed him in administrative confinement (*id.*).

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers of the original document.

Sanders alleges on August 15, 2017, approximately 36 days later, Captain Williams ordered Defendant Sergeant Johns, the confinement housing supervisor, to place Inmate Lorenzo Brownlee, one of the gang members who assaulted Sanders, in Sanders's two-man confinement cell (ECF No. 33 at 8). Sanders alleges both he and Inmate Brownlee "expressed concerns about their respective safety" and requested separation (*id.*). Sanders alleges Sergeant Johns responded that he did not care about their safety concerns, and the housing assignments would remain the same because Captain Williams had ordered it (*id.*). Sanders alleges shortly thereafter, Inmate Brownlee told him that Captain Williams had personally orchestrated the July 10 attack on Sanders and paid the inmates to attack Sanders, because Williams believed that Sanders had witnessed Williams' involvement in illegal activities and had "snitched" (*id.*).

Sanders alleges that on August 17, 2017, Warden Maiorana came to the cell, and Sanders and Inmate Brownlee told Maiorana about "the contentious situation that existed between them" and "the potential safety concerns" (ECF No. 33 at 9). Sanders alleges Warden Maiorana wrote their names down and left (*id.*). Sanders alleges on August 22, 2017, after he had filed informal and formal grievances, he was moved to Protective Management (*id.*).

Sanders alleges on August 25, 2017, he appeared before the Institutional Classification Team ("ICT") and was told that he was being removed from Protective Management based upon his own requests for removal (ECF No. 33 at 9). Sanders alleges he told the ICT that he did not request removal from Protective Management (*id.*). Sanders alleges the ICT showed him his alleged written requests for removal, but Sanders states he did not write or sign the requests (*id.*). Sanders alleges he was released into the general population on August 28, 2017 (*id.*). In a prior complaint, Sanders alleged he was transferred from Blackwater River C.F. to another institution approximately one month later, following an interview with the Inspector General (*see* ECF No. 19 at 10).

Sanders claims that Defendants were deliberately indifferent to his safety, in violation of the Eighth Amendment (ECF No. 33 at 10). He seeks declaratory relief and compensatory and punitive damages (*id.*).

II. DISCUSSION

The court is statutorily required to review the Fifth Amended Complaint to determine whether this action or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). To survive dismissal at the

screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim

"are conclusory and not entitled to be assumed true." Id. at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679. Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citations omitted); *see also* Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014); Rodriguez v. Sec'y for the Dep't of Corr, 508 F.3d 611, 616–17 (11th Cir. 2007); Purcell ex. rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1319 (11th Cir. 2005); Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003).

A prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does

not respond reasonably to the risk." Carter, 352 F.3d at (internal quotation marks omitted) (alterations adopted); *see also* Farmer, 511 U.S. at 828 ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). To survive dismissal on a deliberate indifference failure-to-protect claim, a plaintiff must allege facts which plausibly suggest (1) a substantial risk of serious harm; (2) the defendant's deliberate indifference to that risk; and (3) causation. Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013).

"When examining the first element—a substantial risk of serious harm—the court uses an objective standard." Caldwell, 748 F.3d at 1099 (citation omitted).

The second element—deliberate indifference in the context of a failure to prevent harm—has a subjective and an objective component. *See* Caldwell, 748 F.3d at 1099. To satisfy the subjective component, a plaintiff must allege facts suggesting that the defendant "actually (subjectively) knew that an inmate faced a substantial risk of serious harm." Id. (citing Rodriguez, 508 F.3d at 617). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "The known risk of injury must be a strong likelihood, rather than a mere possibility before a correctional officer's failure to act can constitute deliberate indifference."

Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). The "risk calculation is a prospective determination of what might happen based upon events that have already occurred." Brooks v. Warden, 800 F.3d 1295, 1301–02 (11th Cir. 2015). It does "not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment." *Id.* (quoting Purcell, 400 F.3d at 1320). Further, the claim requires the defendant to be subjectively aware "of a particularized threat or fear felt by [p]laintiff." Carter, 352 F.3d at 1350. Whether a prison official had the requisite awareness of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (citation omitted). At the same time, the deliberate indifference standard—and the subjective awareness required by it—is far more onerous than normal tort-based standards of conduct sounding in negligence. Goodman, 718 F.3d at 1332 (citation omitted).

To satisfy the objective component of the deliberate indifference element, a plaintiff must produce evidence that the defendant "disregard[ed] that known risk by

failing to respond to it in an (objectively) reasonable manner." Rodriguez, 508 F.3d at 617.

Prison officials may escape liability on a deliberate indifference claim if they show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. *See* Farmer, 511 U.S. at 844. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment" and does not give rise to a constitutional violation. *Id.* at 838.

With respect to causation, section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks omitted). The constitutional deprivation must, in turn, be "a legal cause of [the plaintiff's] injuries." Williams v. Bennett, 689 F.2d 1370, 1381 (11th Cir. 1982).

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See* Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983) "Because vicarious liability is inapplicable to [ ] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Under Iqbal, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*, 556 U.S. at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Keating, 598 F.3d at 762 (internal quotation omitted). The factual allegations of the complaint must plausibly show that the supervisory official acted with the same

mental state required to establish a constitutional violation against his subordinate; therefore, the court must first identify the precise constitutional violation charged and explain what the violation requires. *See* Franklin v. Curry, 738 F.3d 1246, 1250 (11th Cir. 2013).

As previously discussed, the Eighth Amendment claim at issue here requires a showing of deliberate indifference of the part of the defendant. "Deliberate indifference requires more than constructive knowledge." Franklin, 738 F.3d at 1249. Allegations that a supervisory defendant "knew or should have known" of a substantial risk fall short of this standard. *Id.* at 1250.

The court previously advised Sanders of the standard he must meet to allege a plausible claim against GEO Group and Warden Maiorana, and that his factual allegations must be more than vague and conclusory (*see* ECF No. 22). Despite this advisory, Sanders' allegations are insufficient to state a plausible basis for holding GEO Group or Warden Maiorana liable for the attack on July 10, 2017.

Sanders' sole allegation against GEO Group and Warden Maiorana with respect to the attack is that GEO Group "fail[ed] to act on reports and complaints and inmate requests for help in regard to the pattern of gang related violence at Blackwater River C.F." and was "deliberate[ly] indifferen[t] to its employee's, defendant Charles

Maiorana's failure to take action to control gang members" (ECF No. 33 at 10). However, Sanders acknowledged in a prior complaint that at the time of the attack, policies and regulations were in place which prohibited the five inmate assailants to enter and leave Sanders' housing area and dormitory, and that the assailants entered even though there were three secured doors (ECF No. 19 at 6; *see also* ECF No. 33 at 6). Sanders does not allege any specific conditions at Blackwater River C.F. which created a substantial risk of attacks by inmate gang members; nor does he allege facts suggesting that Warden Maiorana subjectively knew that subordinate officers were instigating inmate-on-inmate attacks or facilitating such attacks by granting gang members access to other inmates' dormitories and cells.

Further, Sanders fails to allege facts suggesting that either GEO Group or Warden Maiorana *actually knew* that there was a substantial threat Sanders would be attacked. *See* Franklin, 738 F.3d at 1250. And Sanders' own allegations undercut the legal conclusions he asks the court to draw from them, and his allegations fail to allow the court "to draw a reasonable inference that the [supervisory defendants] are liable for the misconduct alleged." *See id*. at 1252 (quoting Iqbal, 556 U.S. at 678). Therefore, Sanders has failed to state a plausible basis for holding GEO Group or Warden Maiorana liable for the July 10, 2017 attack.

With respect to the housing of Sanders with Inmate Brownlee from August 15–22, 2017, Sanders does not allege this was done pursuant to a custom or policy of GEO Group or Warden Maiorana. Indeed, Sanders previously acknowledged that "regulations and operating policies" were in place at Blackwater River C.F. to prevent inmates who were victims of assaults by gang members to be housed in the same cell as the assailant gang members (*see* ECF No. 19 at 13). Although Sanders states he and Inmate Brownlee personally advised Warden Maiorana of their history and requested separation for their protection on August 17, 2017, Sanders admits that he was separated from Brownlee and placed in Protective Management five days later. Sanders has not alleged facts suggesting that the five-day delay was attributable to Warden Maiorana, let alone that it was attributable to Maiorana's deliberate indifference, as opposed to negligence. Moreover, Sanders does not allege he suffered any injury as a result of the five-day delay. Therefore, Sanders' allegations fail to state a plausible Eighth Amendment claim against GEO Group or Warden Maiorana with respect to his being housed with Inmate Brownlee.

III. CONCLUSION

The factual allegations of the Fifth Amended Complaint fail to state a plausible claim for relief against GEO Group or Warden Maiorana. Therefore, Sanders' claims against these two Defendants should be dismissed with prejudice.

Accordingly, it is respectfully **RECOMMENDED**:

1.   That Plaintiff's claims against Defendants GEO Group and Charles Maiorana be **DISMISSED with prejudice**, under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted;

2.   That the case be recommitted to the undersigned for further proceedings on Plaintiff's Eighth Amendment claims against Defendants Williams, Crawford, and Johns.

At Pensacola, Florida, this 22nd day of October 2018.

> /s/ *Elizabeth M. Timothy*
> **ELIZABETH M. TIMOTHY**
> **CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**