# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

MICHAEL QUINCY SANDERS,

    Plaintiff,

v.                                                          Case No. 3:17-cv-803-TKW/MJF

CHIEF WILLIAMS, et al.,[1]

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Quincy Sanders (DC #E16705), a prisoner represented by counsel, has filed a sixth amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 53). Defendants Williams, Johns, and Crawford move to dismiss the complaint for failure to exhaust administrative remedies and for failure to state a claim against Johns and Crawford. (Doc. 67 (motion); Docs. 68, 72 (supporting materials)). Sanders opposes dismissal of the claims against Williams and Crawford, but agrees to dismissal of the claim against Johns. (Doc. 70). The undersigned recommends that Sanders's claims against Williams and Crawford be dismissed for failure to exhaust

---

[1] Plaintiff's sixth amended complaint refers to Chief Williams as "Captain" Williams and Lieutenant Johns as "Sergeant" Johns. The undersigned uses the titles that the Defendants provided.

administrative remedies, and that Sanders's claim against Johns be dismissed pursuant to Sanders's voluntary dismissal.[2]

## I.   Background and Procedural History

Sanders initiated this action, *pro se*, on or about October 19, 2017, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1).[3] On April 3, 2019, Sanders filed a sixth amended complaint with the assistance of counsel. (Doc. 53).

Sanders's sixth amended complaint names as Defendants three prison officials at Blackwater Correctional Facility—Chief Williams, Lieutenant Johns, and Officer Crawford. Sanders claims that the Defendants violated his constitutional rights when: (1) Williams and Crawford intentionally introduced five gang members into

---

[2] The case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

[3] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). Sanders signed his complaint on September 15, 2017, but does not indicate the date he delivered it to prison officials for mailing. There is no institutional stamp on the complaint. The complaint was received by the clerk of court on October 19, 2017. (Doc. 1 at 1). Whether the complaint is deemed filed on September 15, 2017, or October 19, 2017, is not dispositive of any issue raised by the parties. The undersigned assumes (without deciding) that the latter date is the filing date only because it would be more favorable to Sanders by allowing him more time to exhaust before the PLRA's exhaustion requirement was triggered. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1324 (11th Cir. 2007) (holding that the operative date for applying 42 U.S.C. § 1997e(a), is the date the complaint is filed).

his dormitory on July 10, 2017, knowing that they would attack Sanders; (2) Williams was deliberately indifferent to Sanders's serious medical needs following the July 10, 2017, attack; and (3) Williams and Johns subsequently housed one of Sanders's attackers (Inmate Brownlee) in a two-man cell with Sanders on August 15, 2017, while he was in administrative confinement. (Doc. 53 at 4-13). Sanders seeks declaratory and injunctive relief, damages, attorney's fees and costs. (*Id.* at 13-14).

The Defendants move to dismiss Sanders's claims under Rule 8 and Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that: (1) Sanders failed to exhaust available administrative remedies as required by 42 U.S.C. § 1997e(a); (2) Sanders's allegations fail to state a facially plausible Eighth Amendment claim against Johns; and (3) Sanders's allegations fail to state a facially plausible Eighth Amendment claim against Crawford. (Doc. 67).

Sanders responds that dismissal of his claim against Johns is appropriate, but that his remaining claims should not be dismissed, because Defendants' proof that he failed to exhaust administrative remedies is insufficient, and his complaint states plausible Eighth Amendment claims against Williams and Crawford. (Doc. 70).

**II.   Discussion**

    **A.   Sanders's Claim Against Defendant Johns Should Be Dismissed Pursuant to Sanders's Voluntary Dismissal**

Defendants move to dismiss Sanders's claim against Defendant Johns for failure to state a claim upon which relief can be granted. (Doc. 67 at 2, 12-13). Sanders responds:

> Plaintiff agrees that the basis for dismissing Johns from the lawsuit may be well taken. Johns' only role in the statement of facts is that he participated in placing one of the gang members who assaulted Sanders in confinement with Sanders. However, there is no allegation of serious physical injury or harm to Sanders which resulted from this action of Johns at the direction of Williams. Plaintiff is filing a notice of voluntary dismissal without prejudice as to Sergeant Johns.

(Doc. 70 at 6). Sanders's claim against Johns should be dismissed pursuant to Sanders's waiver and voluntary dismissal. *See* Fed. R. Civ. P. 41(a).

    **B.   Sanders's Claims Against Defendants Williams And Crawford Should Be Dismissed for Failure to Satisfy the PLRA's Exhaustion Requirement**

Defendants assert that Sanders failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. 67 at 2-11). In addition, Defendant Crawford contends that Sanders's sixth amended complaint fails to state a facially plausible Eighth Amendment claim against him concerning the July 10, 2017, attack. (Doc. 67 at 2, 13-14). Because the

exhaustion issue is dispositive, the remainder of this Report and Recommendation is confined to that issue.

### 1. *The PLRA's Exhaustion Requirement*

The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' **before** a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

"[T]he PLRA exhaustion requirement requires **proper** exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. An "untimely or otherwise procedurally defective" grievance will not properly exhaust administrative remedies. *Id.* at 83.

The FDC's grievance procedure requires an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the Warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). *See* Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010). Appeals and direct grievances to the Office of the Secretary are processed through the institution. Fla. Admin. Code r. 33-103.007(5). Each institution has a designated office through which grievances and appeals are processed. (*Id.*). That designated office has a logging and tracking system that records and documents receipt and mailing of inmate grievances and appeals. (*Id.*).

### 2.     *Procedure for Ruling on an Exhaustion Defense*

A failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the PLRA. The defense of failure to exhaust should be treated as a matter in abatement. *See id.* at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *See id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the

defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies. *See, e.g., Singleton v. Dep't of Corr.*, 323 F. App'x 783, 785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.") (citing *Bryant*, 530 F.3d at 1376).

### 3. *Application of the Turner Procedure*

Sanders's sixth amended complaint asserts the following within its jurisdictional allegations: "SANDERS has fully exhausted his administrative

remedies." (Doc. 53 at 2 ¶ 3). Sanders's Statement of Facts supports this assertion with the following factual allegations:

> On August 22, 2017, Informal and Formal Grievances by SANDERS to Warden Maiorana, SANDERS was moved to Protective Management. SANDERS' written formal grievance was returned without action.

(Doc. 53 at 7-8, ¶ 25). Thus, according to Sanders's allegations, his exhaustion efforts consisted of two grievances filed with the Warden's office in August 2017: an informal grievance and a formal grievance, the latter of which was returned without action. (*Id*.).

The Defendants' motion to dismiss acknowledges those grievances, and alleges that they are the **only** grievances Sanders filed relating to his confinement at Blackwater CF following the July 10, 2017, attack. (Doc. 67 at 10). On August 15, 2017, Sanders signed his informal grievance addressed to the Warden, and stated:

> I'm writing this grievance [b]ecause I'm under investigation pending transfer for my saf[e]ty because I was jumped by bloods but you keep moving bloods in my room with me[.] I have seizures and would liked [sic] to be housed alone or if not because of my se[iz]ures put me in the infirmary please.

(Doc. 68 at 10) (copy of grievance at Doc. 68-2, Simpson Decl., Ex. 1-A). Prison staff at Blackwater CF received the informal grievance on August 15, 2017, and assigned log number 185-1708-0142. (*Id*.). The grievance was denied on August 19, 2017, by a prison staff member. The response stated:

> Your grievance has been reviewed with the following response: Be advis[ed] hav[ing] seizures doesn't justify a house alone status. However[,] the issue of your roommate being a [sic] involved in a STG Group will be passed on to the Assistant Investigator for clarification.

(*Id*.). Sanders was advised: "You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to." (*Id*.).

On August 19, 2017, Sanders signed a formal grievance addressed to the Warden stating:

> On 7-10-17 I had a se[iz]ure and got sent out to the hospital. Once I came back Capt Williams locked me up under investigation because he said I was jumped. Now they denied my transfer and on 7-26-17 they let me out but locked me right up again saying it was not safe. I wanted to stay out the box but Lt. Willis wouldn't let me. Say the paperwork was in to get me transferred and he feared for my life. Now if you fear for my life my last were Bloods that Williams said jumped me and put me in the hospital. No one is trying to help me and no one is respon[d]ing to me. I just want to be released out the box please and thank you. [I]f my safety was so important to you all why do you keep putting my life in jeperoidy [sic]. I haven't had a DR in over five years. I want to go to CDC and go to school again. Thank you.

(Doc. 68 at 10-11) (copy of grievance at 68-3, Simpson Decl., Ex. 1-B). The formal grievance was received on August 21, 2017, and assigned log number 1708-185-

067. (*Id.*). Warden Maiorana returned the formal grievance to Sanders without action on September 5, 2017, stating:

> Your grievance was received, reviewed and evaluated with the following response:
>
> Be advised that per 33-103.014(e), your formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred pursuant to subsection 33-103.006(3), F.A.C.
>
> Based on the above information your grievance is returned without action.

(*Id.*).[4]

The Defendants allege that the above two grievances are the only grievances Sanders filed between July 10, 2017 (the date of the attack), and October 19, 2017 (the date this lawsuit was filed), concerning his confinement at Blackwater CF. (Doc. 67 at 10-11).[5] Defendants support their allegations with grievance records and

---

[4] Rule 33-103.006(3) allows certain types of grievances to bypass the informal grievance step and be filed directly at the institutional level as a formal grievance. Fla. Admin. Code r. 33-103.006(3)(a). A direct formal grievance may be returned to the inmate without action if it was not received within 15 calendar days of the date on which the incident or action being complained about occurred. *See* Fla. Admin. Code rr. 33-103.014(1)(e).

[5] The Defendants go even further by alleging that even as of the date their motion to dismiss was filed on June 7, 2019, Sanders (1) had not filed **any** grievance alleging that Williams, Crawford, or any other prison official improperly allowed gang members into his housing dormitory on July 10, 2017, and (2) had not filed **any** grievance or appeal with the Office of the Secretary concerning the July 10, 2017,

declarations from the records custodians at Blackwater CF and the FDC's Central Office. (Docs. 68, 72). The Defendants argue that the two grievances discussed above were insufficient to exhaust any of the claims raised in this lawsuit, because: (1) no grievance alleged that Williams, Crawford, or any other prison official facilitated the July 10, 2017, attack; (2) Sanders's formal grievance filed at the institutional level was returned without action as untimely; and (3) Sanders failed to complete the grievance process by filing a grievance or appeal to the Office of the Secretary. (Doc. 67 at 9-11).

Sanders's response to Defendants' motion to dismiss contains no additional factual allegations concerning exhaustion. (Doc. 70). Sanders relies on the allegations of his sixth amended complaint, and argues that his complaint survives dismissal under *Turner*'s first step, because his sixth amended complaint alleged that he fully exhausted administrative remedies, and this court must accept that allegation as true. (Doc. 70 at 3).

Sanders's argument fails for two reasons. First, Sanders's assertion in his jurisdictional allegations that he "fully exhausted his administrative remedies" is a

---

attack, or his subsequent cellmate assignments at Blackwater CF. (Doc. 67 at 9-11). The relevant time period for exhaustion purposes is July 10, 2017, to October 19, 2017.

legal conclusion, not a factual allegation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (distinguishing "labels and conclusions" from factual allegations); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (explaining that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Second, Sanders's factual allegations supporting his conclusion that he "fully exhausted" identify only two grievances: an informal grievance and a formal grievance, both of which were addressed to the Warden. (Doc. 53 at 7-8, ¶ 25). Sanders acknowledges that his formal grievance was returned without action. (*Id*.). Neither Sanders's sixth amended complaint, nor his response to Defendants' motion to dismiss, alleges any other exhaustion efforts. Although Sanders argues that the Defendants "cannot prove their own self-serving statement that their records do not demonstrate a grievance was timely filed and properly appealed" (Doc. 70 at 3), that is not an allegation that he **in fact filed** any grievance or appeal beyond the two August 2017 grievances.

Accordingly, as the record stands, there is no factual dispute about the steps Sanders took to administratively exhaust the claims in this lawsuit. Sanders's exhaustion efforts were confined to Informal Grievance log #185-1708-0142 filed

on August 15, 2017, and Formal Grievance log #1708-185-067 filed on August 17, 2017. Those grievances fail to satisfy the PLRA's exhaustion requirement.

Sanders's Informal Grievance log #185-1708-0142 filed on August 15, 2017, did not grieve the July 10, 2017, attack; rather, it grieved Sanders's cellmate assignment(s) **after the attack**. Although this grievance arguably could constitute the first step toward grieving Williams's housing Brownlee in the same cell with Sanders on August 15, 2017, it cannot be construed, and was not construed, as grieving Williams and Crawford's alleged involvement in the July 10, 2017, attack.

Moreover, Sanders did not appeal the denial of his informal grievance. Although Sanders filed Formal Grievance log number 1708-185-067, that grievance did not appeal the issue of Sanders's being housed with cellmates who were members of the Bloods, nor did it not attach a copy of Sanders's informal grievance and response. The direct formal grievance complained of Sanders's placement in administrative confinement and sought release from that confinement to the general population. Sanders's formal grievance cannot be construed, and was not construed, as grieving Williams and Crawford's alleged involvement in the July 10, 2017, attack or Williams's housing Brownlee with Sanders. The grievance was construed, reasonably, as challenging Sanders's placement in administrative confinement upon returning from the hospital on July 10, 2017. (Doc. 53 at 6, ¶ 21 (stating that August

15, 2017, was approximately 36 days after Sanders's placement in administrative confinement)).

Not only did Sanders's formal grievance fail to apprise officials of the claims raised in this lawsuit (Williams and Crawford's alleged involvement in the July 10, 2017, attack and Williams and Johns's housing Brownlee with Sanders on August 15, 2017), the grievance failed to comply with the FDC's grievance procedures in that it was filed more than fifteen days after the incident of which he complained – his placement in administrative confinement.

In addition to the deficiencies noted above, the overarching deficiency in Sanders's exhaustion efforts is that he never completed the grievance process by presenting his claims to the Office of the Secretary. This fact is undisputed, because although Sanders's response to Defendants' motion to dismiss expresses skepticism about the integrity of the FDC's grievance tracking system (*see* Doc. 70 at 3-4), Sanders does not allege that he filed a direct grievance or grievance appeal with the Office of the Secretary before initiating this lawsuit. The FDC's grievance procedure provides for appeals and direct grievances to the Office of the Secretary. *See* Fla. Admin. Code r. 33-103.007(1). Sanders never availed himself of this administrative remedy.

In light of the undisputed facts, Defendants Williams and Crawford are entitled to dismissal of Sanders's sixth amended complaint for failure to properly exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

## III. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendants' motion to dismiss (Doc. 67) be **GRANTED**, and that Plaintiff's claims against Defendants Williams and Crawford be **DISMISSED** with prejudice for failure to exhaust administrative remedies.

2. Plaintiff's claims against Defendant Johns be **DISMISSED** without prejudice pursuant to Sanders's concession that his allegations fail to state a facially plausible Eighth Amendment claim against Johns, and Sanders's corresponding request for voluntary dismissal of this claim under Fed. R. Civ. P. 41(a).

3. The clerk of the court be directed to close this case file.

At Panama City Beach, Florida, this 1st day of October, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**